Daniel, J.
The indictment is in the common law form 0f an indictment for murder. In the demurrer to it, which was overruled by the Circuit court, the causes of demurrer are not stated. And as to those causes which have been assigned by the counsel for the prisoner, in the argument here, they seem to be fully answered by the cases of Miller v. The Commonwealth, 1 Va. Cas. 310; Vance v. The Commonwealth, 2 Va. Cas. 162; and Wicks v. The Commonwealth, 2 Va. Cas. 387.
In the last mentioned case, the General court held, unanimously, that the true object and effect of our act of 1802-3 was not to create two offences out of the rime of murder, but to arrange the various kinds of arder at the common law, under the two denominaons of murder in the first degree, and murder in the oecoad degree; and to annex to the cases in each denomination a punishment corresponding in severity to the degree of atrocity with which they might be perpetrated, and by which they would be marked as belonging to the one or the other of said denominations of murder. And that the legislature contemplated no change in the frame of the indictment, they further held, was plainly to be inferred, from the clause requiring the juries, in all cases of indictments for murder, when they find the party accused guilty of murder, to ascertain in their verdict whether it be murder in the first degree or second degree; and also from the clause requiring the court, in case of conviction by confession, to proceed by examination of witnesses to determine the degree of crime, and to give sentence accordingly. These clauses, they held, would have been wholly unnecessary, if it had been in the contemplation of the framers of the act that the indict *597 ment should in each, case set out specially the fea. by which the offence should be marked as belon0.„0' to murder in the first or murder in the second degree : inasmuch as a general verdict of guilty on the one hand, or a confession of guilt on the other, under such an indictment would necessarily, without any further resort to the jury or the examination of witnesses, ascertain the degree.of the offence beyond all doubt.
In conformity with these views, the practice has hitherto generally, if not uniformly prevailed in our courts, of prosecuting and punishing all acts of felonious homicide whatsoever, under indictments for murder, framed as at common law.
The same practice has prevailed in Pennsylvania from an early period, under the act of the legislature of that state, of the 22d April 1794, from which the first section of our act of 1802-3 is taken. White v. Commonwealth, 6 Binn. R. 179; Wharton’s Am. Cr. Law 410.
No injustice or inconvenience is shown to have resulted from the practice; and I do not know of any act of our legislature which can be construed as indicating a purpose to "change it. I see no reason for disturbing it.
I can see no objection to the admissibility of the testimony, the refusal to exclude which, forms the ground of the prisoner’s first exception. It seems now to be well settled, that whenever the bodily or mental feelings of an individual are material to be proved, the usual expressions of such feelings, made at the time in question, may be given in evidence. If they were the natural language of the affection, whether of body or mind, they furnish (it is said) satisfactory evidence and often the only proof of its existence : And whether they were real or feigned is for the jury to determine. So also the representations, by a sick person, of the nature, symptoms and effects of the *598 y under which he is laboring at the time, are received as original evidence. 1 Greenl. Evi. 179; Aveson v. Lord Kinnaird, 6 East’s R. 188. Such representations (it is said) are admitted from necessity, and as being in the nature of pars res gestee. Roulkac v. White, 9 Ired. R. 63. And hence it is the practice to receive them, though made by persons who, if produced in court to testify, would be properly rejected as incompetent witnesses. Frequent instances of this will be found in the reports of cases in the courts of the southern states, growing out of actions on warranties of the soundness of slaves. In such actions, where the question is as to the diseased state of the slave at a particular time, the appearance and actions of the slave, his exclamations or declarations, at the time, as to his pains and other symptoms, are all regarded as part of the res gestee, and admitted on that ground. Such declarations, it was said by the court in Jones v. White, 11 Humph. R. 268, drawn from the slave by .those investigating the character and symptoms of the disease, become part of that investigation, and as such may properly go to the jury. The admissibility of such evidence is further sustained'by the cases of Marr v. Hill, 10 Missouri R. 321; Grey v. Young, Harper’s S. C. R. 38; Biles v. Holmes, 11 Ired. R. 16; Allen v. Vancleave & Kelso, 15 B. Monr. R. 236; Clancy v. Overman, 1 Dev. & Batt. 402.
In one of these cases, however (Marr v. Hill, &c.), it was said by the court that the mere declarations of a slave that he was diseased, without proof of any symptoms or appearance of disease, would be mere hearsay, which ought not to affect the rights of any person, and would be clearly inadmissible. Without stopping to enquire whether .this dictum correctly states a qualification to the rule, it is obvious to remark that such a qualification can have no application, where, as here, the enquiry is as to the condition *599 of a person who had been assaulted and beaten onc¡K two hours before the period at which the declarations as to her sufferings were made. On the contrary, the circumstances under which the question, as to the admissibility of the evidence, arises here, seem to me to bring this case directly within the influence of the decision in Biles v. Holmes. There the object was to show that a slave had been permanently injured by a severe blow on the head; and the plaintiff' was allowed to prove that “ he complained much of headache when exposed to the sun, and stated his inability to work in the sun.” And it does not appear from the report of the case that the offer on the part of the plaintiff to prove such complaints and statements, had been preceded by proof of any other evidence of the supposed malady. And in the case of Aveson v. Lord Kinnaird, it was said by Lawrence, J. that it was in every day’s experience in actions of assault, that what a man has said of himself to his surgeon, is evidence to show what he suffered by reason of the assault. Aveson v. Lord Kinnaird, 6 East’s R. 188, already cited.
Doubts have been expressed in some cases whether the admissibility of such evidence should not be restricted to the proof of complaints and statements made by the sick or suffering persons to their physicians. On a reference, however, to the cases which I have cited, it will be seen that the courts recognize no distinction, in respect of competency, between such declarations, when made to physicians, and when made to unprofessional persons. I think the evidence was properly received.
The objections to the testimony of Dr. Waring, so far as founded on the supposed absence of proof of his being an expert, must have proceeded fronj a mistake — inasmuch as it appears from the second bill of exceptions, to which express reference is made in the *600 ird and fourth, that he was proved' to be a practicing physician in the city of Richmond. This evidence, in the absence of any conflicting proof, was sufficient to justify the court in overruling the objection.
In the instructions which the court gave to the jury at their instance, I can perceive no error. The variance between the dates of the beating and injury inflicted on the deceased, and of her death, as averred in the indictment, and the true dates of those events, as shown by the proofs, was wholly immaterial. Commonwealth v. Ailstock, 3 Gratt. 650; Wharton Am. Cr. Law 220. And it is obvious that in saying to the jury, “ that if the ingredients necessary to constitute the crime were proved to the satisfaction of the jury, they might find the prisoner guilty under the indictment,” the judge could not have been understood by the jury as intending to deny the truth of the proposition that they ought to be satisfied beyond a reasonable doubt of the guilt of the prisoner before they could convict him. The question propounded by the jury, and the answer given by the judge, both plainly pointed to the variance between the dates alleged and proved, and not to the degree of belief or satisfaction, in the minds of the jury, respecting the guilt of the prisoner, essential to his conviction. The instruction given by the judge amounted in effect to nothing more than saying to the jury, that if all the other elements of the crime were established in accordance with the requirements of the law, the variance just mentioned presented no valid objection to their finding the prisoner guilty under the indictment.
It seems to me, however, that the court below erred in receiving a portion of the testimony set out in the fifth bill of exceptions; and more particularly that portion sought and elicited by the ninth question propounded by the prosecution to the witness Waring. I know of no authority which would hold a party *601 criminally responsible in a case such as that which it was the aim and tendency of this testimony to establish.
It is true that if a man be sick of a mortal disease, and receives a wound which, by irritating or provoking the disease to operate more violently, hastens his death, the party inflicting the wound may be held accountable for the death. In such a case it is said, the deceased has not died ex visitatione dei, for the wound has hastened the death, and the offender cannot apportion his wrong. 1 Hale 428.
So again, it is said by the same authority, if a man receives a wound not mortal, and through neglect or failure to use the proper application, it turns to a gangrene or fever which causes the death, then the wound, being the cause of the gangrene or fever, is regarded as the causa causati, and the. party inflicting the wound may be held responsible for the death.
On the other hand, however, if the wound be not mortal, but with ill applications the party dies, and it clearly appears that the medicine and not the wound was the cause of the death, this is not homicide.
It will be seen that there is a marked difference between the first two cases thus instanced by Lord Hale, and the case pointed to by the testimony in question.
In neither of the former is any independent cause interposed between the wound and the death. In the first of the two the death would not have occurred at the time it did but for the wound. ' Though the sick man was laboring under a disease, which if left to take its natural course, would result in death at no distant period; yet the death in respect of time is plainly referable to the wound. So, in the second, though the gangrene is the proximate cause of the death, yet the gangrene is a consequence of the wound; and so the death is, by a regular course and natural order, in the sequence of events, traced up to the wound as its *602 ■originating cause. But in the case sought to be made out by the testimony objected, to, a disease is supposed to have supervened between a.blow not mortal and the death: a disease not caused by the blow, but coming by the visitation of Providence.
In such a case, the exemption of the party inflicting the blow from criminal accountability, is, it seems to me, even more obvious than in the third of the instances cited from Hale. For then it might be said, the “ill application” of which the party died would not have been resorted to but for the wound inflicted by the wrong-doer; and if the connection, there, between the wound and the death, is too remote to be made the foundation of criminal responsibility, a fortiori, must such be the rule when the disease, but for the supervention of which the death would not have occurred, is, in its origin, independent of the wound or blow, and wholly out of the course of its consequences. In such a state of things, the blow and the death have no necessary or natural connection with each other as cause and effect. The blow is neither the proximate cause of the death, nor is it, though made by extraneous circumstances to accelerate it, linked with it in the regular chain of causes and consequences. A new and wholly independent instrumentality is interposed in the shape of the disease; and in contemplation of law, the death stroke is inflicted by the hand of Providence, and not by the hand of violence. )
I am also 'of the opinion that the Circuit court, instead of overruling, ought to have sustained the motion of the prisoner to exclude from the jury the second question propounded to Dr. Gibson, and his answer thereto, set out in the sixth bill of exceptions. I do not doubt that in criminal as well as in civil trials, when questions of art or science are involved, persons who have peculiar skill or experience therein, may be *603 introduced to give to the jury their opinions on such questions. In 1 Philips Evidence, p. 190, it is said that the opinion of a v^íiess in general is not evidence : the witness must speak to facts. But on questions of science or trade, or others of the same kind, persons of skill may speak not only as to facts, but are allowed also to give their opinions in evidence. The opinion of medical men is e vidence as to the state of a patient whom they have seen. Even in cases where they have not themselves seen the patient, but have heard the symptoms and particulars of his state detailed by other witnesses at the trial, their opinion on the nature of such symptoms, has been properly admitted. Thus on a question of sanity, medical men have been permitted to form and express their judgment upon the representation which witnesses at the trial have given of the conduct, manner and general appearance exhibited by the patient. So in prosecutions for murder, they have been allowed to state their opinion whether the wounds described by witnesses were likely to be the causes of death.
In England it would seem that the practice in respect to the character and scope of the questions which ought to be propounded to a professional person or expert in such cases, is not as yet very well settled, iS Leading Criminal Cases 105, notes. I think, however, that it is a well established practice in this country, in cases of homicide, to allow physicians and surgeons to say, upon a state of facts testified to either by themselves or by other witnesses, whether in their opinion a particular wmund or blow described would be an adequate cause, or even, whether such wound was, in their opinion, the actual cause of the death in the particular case. Commonwealth v. Rogers, 7 Metc. R. 500. But it would seem to be generally agreed that in such case the opinion of the witness is to be restricted to matters of science, and that he is not to *604 be allowed to give an opinion on things with which a jury may be supposed to be equally well acquainted. S Philips 761, notes. And especially, that the questions should be so shaped and the answers so given as to exclude any opinion of the medical witness as to the credit of the witnesses on the truth of the facts testified to by others. Commonwealth v. Rogers, just cited.
The question and answer under consideration are in violation of these guards and restrictions, and invade the province of the jury. The question calls for, and the answer gives not simply the opinion of the witness as a man of science on a given or supposed state of facts, but an opinion necessarily involving his judgment as to the truth of evidence, not free from conflict.
The like objection exists in respect to the course pursued in the examination of Dr. Waring; which is made the ground of the second bill of exceptions.
I do not think that the Circuit court committed any error in overruling the motion of the prisoner to set aside the verdict on the ground that the jury was improperly charged by the clerk. For if we should concede, for the sake of the argument, that the verdict of guilty of murder in the second degree only, amounted also in effect to a verdict of not guilty of murder in the first degree, and that upon the second trial the prisoner ought not to have been again placed in jeopardy for murder in the first degree, we would still be of the opinion that the motion was properly overruled. The first error, if any, was committed when the second trial was granted. The prisoner ought then to have asked the court to make an order, that upon the second trial so much of the charge to the jury should be excluded as related to murder in the first degree. Having failed to do so, he should have made such a motion to the court on the new *605 trial before the charge to the jury was given? or at least have brought the subject to the notice of the court before the jury retired. He has been found guilty on the second trial, not of murder in the first degree, but of manslaughter, for which he could without question be legally tried and convicted under the indictment. The prisoner has not shown, and the court cannot see how he has been, or could have been injured by the course pursued.
As, however, on account of the errors in the ruling of the Circuit court, which we have already indicated, we have to reverse the judgment, and remand the cause for a new trial, the question does necessarily arise, whether upon such trial the prisoner may be yet legally tried and convicted of murder in either degree? or whether the Circuit court is to be directed so to modify the charge to the jury as to restrict their enquiry and finding to the offence of manslaughter.
In the case of Lithgow v. The Commonwealth, 2 Va. Cas. 297, it was decided by the General court, that when there are several counts in an indictment, and on one of them the prisoner was convicted, and acquitted of the rest? if, on a writ of error obtained by him, the judgment and verdict are set aside, and a new trial awarded to him, the prisoner can only be tried again on the count on which he was convicted, and not on the other counts of which he had been before acquitted. The court said there was no reason why a prisoner, who had been rightfully acquitted upon one of several offences which have been joined in the same indictment, should be again brought into jeopardy for these alleged offences? because, having been wrongfully convicted on another of these separate charges, he seeks and obtains redress against this latter error. And in Bennet v. The Commonwealth, 2 Va. Gas. 234, the same court decided that when there are several counts in an indictment, and the jury convict the pri *606 soner on one of them, finding nothing as to the others, the verdict ought not therefore to beset aside; but the court ought to enter a judgment of acquittal on the counts as to which the jury were silent, though a judgment of conviction may be entered on the one on which the jury had found the prisoner guilty. Thus necessarily deciding that a verdict of guilty on one count, saying nothing as to the others, operated in law a verdict of not guilty on those others. A like decision was made in the cases of Kirk v. The Commonwealth, 9 Leigh 627; and Page v. The Commonwealth, Id. 683.
If there had been in this case, therefore, one count for murder, and another for manslaughter, and there had been a verdict of guilty on the latter count, taking no notice of the former, it would seem to me that under the authority of these cases we would have had to send the case back for a new trial for manslaughter alone. Does it make any difference that the verdict in this case»has been rendered under a single count— a count for murder ? The weight of authority would seem to be with the proposition that it does not. In 1 Bishop on Criminal Law, § 676, in speaking of the waiver, by a prisoner in asking for a new trial, of the protection afforded by the common law maxim, adopted into the constitution of the United States, and into the constitutions of most of the states, “ that no man is to be brought into jeopardy of his life more than once for the same offence,” the author proceeds to say that this waiving of constitutional right is not considered by the court as extending beyond the exact matter concerning which the relief is sought. If, therefore, the verdict which finds a prisoner guilty of part of the charge against him, finds him not guilty of another part; as for example guilty on one count of the indictment, and not guilty on another count; or where there is hut one count, guilty of manslaughter, and *607 not guilty of murder; and a new trial is granted him, be cannot be convicted on the second trial, of the matter of which he was acquitted on the first. '< The same principle is recognized by the Supreme court of Tennessee in Slaughter v. State, 6 Humph. R. 410; in which case it was held that where a party is found guilty of manslaughter on an indictment for murder, and not guilty of murder, and obtains a new trial, he is discharged from the murder, though he may be convicted on the same indictment for manslaughter. The case of Hurt v. The State, 25 Miss. R. 378, is to the like effect. In that case, under an indictment for murder, the verdict found the prisoner guilty of manslaughter, but was silent as to his guilt or innocence of the murder. The court said, that the verdict operated as an acquittal of every crime of a higher grade, of which the prisoner might have been convicted under the indictment upon which the issue was made; otherwise, after undergoing the sentence for manslaughter, he might be put upon his trial for the charge of murder, which would thus be only postponed and not decided by the verdict of manslaughter; that the jury in such case, in contemplation of law, render two verdicts; one acquitting the accused of the higher crime charged in the indictment; the other finding him guilty of an inferior crime; and that the verdict of manslaughter was as much an acquittal of murder as a verdict pronouncing his entire innocence could be. The court further held, that on such a verdict the court below ought to have entered a judgment of acquittal as to the charge of murder, and that whether that judgment was in fact rendered or attached by mere operation of law to the verdict, it was bound to be in the prisoner’s favor; and in asking a new trial, he could not be regarded as asking to disturb the verdict and judgment in his favor.
This case was followed by Brennan v. The People, *608 15 Illinois R. 572. There, too, it was held that a verdict of guilty of manslaughter, under an indictment for murder, saying nothing as to the murder, amounted to an acquittal of the charge of murder, and that the prisoner, upon obtaining a new trial, could only be tried again for the manslaughter. The same views prevailed in the case of The People v. Gilmore, 4 Calif. R. 376; and in Jones v. The State, 13 Texas R. 168. I have seen no case in which a contrary doctrine has been declared, except the case of the United States v. Harding, Wallace, jr. R. 127; decided in the Circuit court of the United States for the third circuit.
It is true that in the case of Gwatlcin, who obtained in the General court the reversal of a judgment convicting him of murder in the second degree, the order remanding the cause for a new trial was in general terms. 9 Leigh 678. And on a second trial he was convicted of murder in the first degree; and the court below rendered a judgment accordingly. The case was again brought up to the General court by a writ of error; and a new trial again obtained, on the ground of an improper refusal of the Circuit court to grant the accused a continuance. No question seems to have been raised on the first reversal, as to the character of the order to be made on awarding the new trial. Nor does it appear from the report of the case, that any other error in the proceedings at the second trial was assigned, except the refusal of the court to grant the motion for a continuance.
I do not think we can properly allow to that case the weight of an adjudication expressly deciding that a party who obtains the reversal of a judgment erroneously convicting him of murder in the second degree, iqay, upon his second trial, be properly convicted of murder in the first degree; inasmuch as it does not appear from the report of the case that the question was brought distinctly to the notice of the court.
*609 The same remark applies to the case of Ball v. Commonwealth, 8 Leigh 726, in which the General court granted a new trial in case of a conviction of murder in the second degree. No question of the kind seems to have been raised, and the cause was simply remanded for a new trial.
If, however, these cases could be regarded as express adjudications of the question which they are supposed to have decided, I am not prepared to say that they would necessarily furnish the rule for the case under consideration. There are considerations of a technical character, which might have entered into such decisions, but which have no application to a judgment reversing a conviction of manslaughter. It might be said,- in support of such decisions, that as the indictment, according to our practice, is but an indictment in form for murder at the common law, a party, when found guilty of murder in the second degree, and not guilty of murder in the first degree, is not acquitted of any express averment which the indictment contains. You cannot, by reason of said acquittal, regard any important word in the indictment as stricken out, or treat any express allegation as negatived. If you did, you would thereby vitiate the indictment, and reduce it to something short of a charge of murder in any degree. If, therefore, the party is to be sent back to be tried for murder in any degree, it is necessary that he should be tried under the indictment as it stands, and that he should be regarded as unacquitted (as the fact is) of any one of the material allegations which the indictment contains. If this view does not present a mere technical and unsubstantial difficulty which may be gotten over by modifying the charge to the jury, so as to restrict their enquiry and finding to the grades of offence below murder in the first degree, it is obvious that there may be reasons for the supposed decisions in the cases of Gwatkins and Ball, that *610 do not apply to this. For where a party is found guilty of manslaughter only, you may suppose him not guilty (as by legal consequence he in fact is) of some of the most important allegations of the indictment ; and you may strike. out, or suppose to be stricken out the most important words; as for instance, “ murder,” and “ of malice aforethought,” and still leave an indictment which would contain the charge of manslaughter.
Without going into any further speculation as to the reasons which may have possibly influenced the orders of the General court in the two cases just mentioned, I deem it sufficient to say that they do not amount to express authority requiring us, in a case like the one under consideration, to subject the party, on his new trial, to a trial for murder, and that elsewhere the weight of authority is, in my opinion, clearly the other way.
In this state of the law, I cannot undertake to say to a party who has been erroneously convicted of manslaughter, and who has appealed to this court, that we will not redress his wrong (which we admit to be manifest), except on the condition of his consenting to be again put in jeopardy for a higher offence, of which the jury have in effect once found him not guilty.
I think that for the errors of the Circuit court which have been pointed out, the judgment should be reversed, so much of the verdict set aside as finds the prisoner guilty of manslaughter, and the cause remanded for a new trial for manslaughter only. As, however, the other members of the court who concur in the other portions of this opinion, are of opinion that the order granting a new trial should be a general one, the order will be in accordance with their views.
Moncure and Samuels, Js. concurred in the opinion of Daniel, J. except as to directing the new trial to be for manslaughter only.

*611

*612

*613 The judgment was as follows;
It seems to the court, that upon a trial for hoim It is competent for the attorney for the commonweaiu, to introduce physicians or surgeons to give their opinion on a state of facts testified to by themselves or other witnesses, in respect to a wound or beating proved to have been inflicted on the deceased, as to whether such wound or beating would be a cause adequate to produce the death, or was the actual cause of the death. That this right is, however, subject to the restriction that the interrogatories to such medical persons be so framed as sot to elicit, and their answers so given as not to contain any expression of opinion by them, on the credit of the witnesses, or the truth of the facts testified to by others.
And it seems to the court, that the course pursued in the examination of the witness Dr. Gribson, set out in the sixth bill of exceptions, was in violation of this restriction, and consequently that the Circuit court erred in refusing to exclude from the jury, on the motion of the prisoner’s counsel, the second question put to the said witness, and his answer thereto.
And it seems further to the court, that an error of the like character was committed in the examination of the witness Dr. Waring, as get out in the second bill of exceptions.
And it seems also further to the court, that where in case of homicide it appears that a wound or beating was inflicted on the deceased which was not mortal, and the deceased, whilst laboring under the effects of the violence, becomes sick of a disease, not caused by such violence, from which disease death ensues within a year and a day, the party chai’ged with the homicide is not criminally responsible for the death, although it should also appear that the symptoms of the disease were aggravated and its fatal progress quickened by *614 ébled or irritated condition of the deceased, éd by the violence.
And it also seems further to the court, that the ninth question propounded by the attorney for the commonwealth to the witness Waring, and his answer thereto set out in the fifth bill of exceptions, are in conflict with this rule; and consequently, that the Circuit court erred in refusing to grant the prisoner’s motion to exclude said question and answer from the jury.
For these reasons, the court is of the opinion to reverse the judgment, set aside the verdict, and remand the cause for a new trial on the indictment, to be made on the indictment as it stands, and without any change in the usual charge to the jury»